# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:14-CV-938

| | |
|---|---|
| **NEW BREED, INC.,** | |
| **Plaintiff,** | **VERIFIED COMPLAINT** |
| **v.** | |
| **CHARLES E. PIPER,** | |
| **Defendant.** | |

Plaintiff alleges as follows:

## OVERVIEW

1.     This action arises from Defendant Charles Piper's violation of the noncompetition covenant set forth in his employment agreement with Plaintiff through his engagement by Plaintiff's direct competitor, Fidelitone, Inc. d/b/a Fidelitone Logistics and/or its affiliates ("Fidelitone").

2.     Plaintiff NEW BREED, INC. (together with its affiliates "New Breed"), an XPOLogistics company, is a global third-party logistics services provider.  Its business includes the design, implementation, and operation of comprehensive supply chain solutions for industry leaders, including in the telecommunications and consumer electronics, aerospace, manufacturing, retail and ecommerce, defense, government, entertainment and media, and healthcare industries.  The third-party logistics industry is

intensively competitive and operates on a national or, for companies like New Breed and Fidelitone, international scale.

3.      For more than nine years, Defendant Piper served as New Breed's Vice President of Business Development, based out of the Chicago-land area, where New Breed has a metro campus. In his employment agreement with New Breed, Piper promised for a period of seven (7) months after the termination of his employment not to become employed by a "Competitor," including any "logistics company, third party logistics company[,] or lead logistics company." Piper also promised that for a period of seven (7) months after termination of his employment, he would not solicit employees or customers of New Breed.

4.      In violation of his contractual duties to New Breed, Piper accepted employment with Fidelitone, a competitor that provides third-party logistics services and supply chain management solutions to the manufacturing, retail, medical, and electronics industries, among others. Fidelitone provides services that compete with those offered by New Breed, including, but not limited to, third-party logistics, reverse logistics, inventory management, direct fulfillment, and transportation management.

5.      Piper's breach of his noncompetition covenant is causing, and will continue to cause, irreparable harm to New Breed in a manner that cannot be fully and adequately compensated by monetary damages. Accordingly, in addition to monetary damages, New Breed seeks a temporary restraining order and preliminary and permanent injunctive relief.

Case 1:14-cv-00938-TDS-JEP   Document 1   Filed 11/10/14   Page 2 of 13

## PARTIES AND JURISDICTION

6.     Plaintiff NEW BREED, INC. is a North Carolina corporation headquartered in High Point, North Carolina.

7.     Defendant Charles E. Piper is a resident of Antioch, Illinois.  As described in more detail below, he served as New Breed's Vice President of Business Development from July 25, 2005 until his resignation on or about October 10, 2014.

8.     In his employment agreement with New Breed, Piper consented to personal jurisdiction in the United States District Court for the Middle District of North Carolina for any dispute relating to the employment agreement.

## PIPER'S EMPLOYMENT WITH NEW BREED

9.     In connection with his hiring as Vice President of Business Development, Piper entered into an Employment, Confidentiality and Non-Compete Agreement with New Breed dated June 27, 2005 (the "Employment Agreement") and signed by him on July 6, 2005.  The Employment Agreement is attached to this Complaint as Exhibit 1.

10.     The Employment Agreement provides, in pertinent part, that so long as he is employed by New Breed and for a period of 7 months after termination of his employment, Piper would not become employed with a "Competitor," which includes any entity "operating as a logistics company, third party logistics company or lead logistics company including, but not limited to, being involved in transportation and transportation solutions, warehousing, warehouse and inventory control, delivery and product management, supply chain management, involving network and technology

-3-

based transportation and inventory management solutions, [and] outsourcing repair operations."

11.     The Employment Agreement also provides, in relevant part, that so long as he is employed by New Breed and for a period of 7 months after termination of his employment, Piper would not "solicit or attempt to solicit, for competitive purposes" any New Breed customer or prospective customer or attempt to induce any such entity "to limit, reduce or discontinue obtaining any goods or services from" New Breed.

12.     In the Employment Agreement, Piper also agreed to maintain the confidentiality of New Breed's information. As such, he promised not to disclose New Breed's confidential information without New Breed's prior written consent or to use New Breed's confidential information for his own or any other entity's benefit.

13.     In addition, Piper agreed that the breach or anticipated breach of the Employment Agreement "will cause irreparable and permanent injury to" New Breed and that, in such event, New Breed is entitled to injunctive relief "without the necessity of posting bond."

14.     For the past nine years, Piper served as New Breed's Vice President of Business Development.[1] In this capacity, as detailed below, Piper became privy to New Breed's confidential and proprietary information, including the identity of its customers and prospective customers, such customers' business requirements, and New Breed's business strategy, pricing, and competitive offerings.

---

[1] A job description for Piper's position is attached as <u>Exhibit 2</u>.

15.     Upon information and belief, prior to being hired by New Breed, Piper had no experience in logistics.  To enable Piper to fulfill his duties, New Breed taught Piper the logistics industry, including New Breed's unique and innovative approach to logistics services.  Information regarding New Breed's logistics strategy is competitively sensitive.

16.     As Vice President of Business Development, Piper was responsible for developing relationships with prospective and existing New Breed clients throughout the United States.  These clients are large, sophisticated companies with multimillion dollar logistics contracts.  Because of the size and complexity of these contracts, there is a long lead time — approximately 18 months — to develop the necessary relationships and secure an account.  Having developed relationships with these companies on behalf of New Breed, Piper will be in a position to capitalize upon these connections to benefit Fidelitone and harm New Breed.

17.     As Vice President of Business Development, Piper helped develop business proposals for New Breed's clients and prospective clients.  For instance, Piper worked closely with a select group of high-level New Breed employees to evaluate and formulate multimillion dollar proposals for Fortune 100 companies.  The proposals included, *inter alia*, New Breed's proposed services, its pricing, and its strategy for achieving the desired solution (including anticipated New Breed capital investments and technological solutions).  In developing these proposals, Piper learned confidential, competitively valuable information regarding New Breed's pricing, business strategy, and logistics

Case 1:14-cv-00938-TDS-JEP   Document 1   Filed 11/10/14   Page 5 of 13

services.  This information, in the hands of a competitor like Fidelitone, would allow it to unfairly compete with New Breed.

18.     New Breed has a national footprint.  It not only ships to over 10,000 retail locations but operates more than 70 distribution centers, and has a warehousing and distribution presence in all major U.S. markets.  New Breed can quickly establish and operate distribution centers and other facilities anywhere in the world.  Piper, while he worked for New Breed, did not have a specified geographic territory, but called on customers and potential customers and participated in conferences, events, and strategic sessions all over the United States, consistent with New Breed's footprint.  Travel records from 2012 through 2014, for instance, show that Piper conducted business travel into and surrounding the metropolitan areas of Charlotte, Raleigh and the Piedmont Triangle areas of North Carolina; Denver, Colorado; Louisville, Kentucky; Philadelphia, Pennsylvania; Dallas, Texas; Memphis, Tennessee; Seattle, Washington; Cleveland, Ohio; Kansas City, Missouri; Hartford, Connecticut; Washington, D.C.; Charleston, South Carolina; Columbus, Ohio; New York, New York; St. Louis, Missouri; Atlanta, Georgia; Cedar Rapids, Iowa; Los Angeles, California; San Francisco, California; Fresno, California; Phoenix, Arizona; Nashville, Tennessee; Orange County, California; and Salt Lake City, Utah; as well as Ontario, Canada, San Juan, Puerto, and Montreal, Canada.

19.     Through his work at New Breed, over a period of years, Piper became privy to New Breed's pricing strategy and margins.  Because of the intensely competitive nature of the logistics industry, New Breed closely guards this information, which would

Case 1:14-cv-00938-TDS-JEP   Document 1   Filed 11/10/14   Page 6 of 13

allow a competitor, like Fidelitone, to undercut New Breed in servicing clients. Piper was allowed access to this information for the clients he was working on, and was one of only a few New Breed employees granted such access.

20.     Piper's access to confidential information was not limited to the clients with which he directly worked. Instead, as part of the proposal development process, Piper obtained detailed case studies regarding New Breed's efforts to resolve various clients' logistics problems. Through these case studies, Piper became familiar with different clients' business needs as well as New Breed's strategies and services.

21.     Additionally, Piper obtained confidential information regarding the layout, processes, and innovations used at New Breed's facilities. Piper was also one of a limited number of individuals privy to New Breed's strategy and procedure in operating the Boeing Aggregated Standards Network ("BASN"), a novel logistics and supply chain management program that New Breed developed for Boeing. New Breed closely guards this BASN information, which provides a competitive advantage to New Breed and which could be exploited by another logistics services provider like Fidelitone.

22.     In fulfilling his duties as Vice President of Business Development, Piper traveled to New Breed's offices and facilities around the United States. For example, Piper traveled to New Breed's High Point headquarters to participate in proposal development meetings with other high-level New Breed employees. In addition, Piper accompanied New Breed customers and prospective customers on tours of New Breed's facilities throughout the United States, including those servicing Verizon and Boeing.

Case 1:14-cv-00938-TDS-JEP   Document 1   Filed 11/10/14   Page 7 of 13

Those customers and prospective customers were allowed access to such facilities only upon signing nondisclosure agreements.

## PIPER'S BREACH OF HIS CONTRACTUAL PROMISES

23.     Fidelitone, like New Breed, "is an industry leader in third-party (3PL) and supply chain performance that delivers value-added solutions for [its] clients."  Indeed, although headquartered in Chicago, Illinois, Fidelitone boasts that it is "an industry leader in High Point, NC [in] third party logistics (3PL) and supply chain performance." According to Fidelitone, its "expertise includes:  last mile delivery, order fulfillment, supply chain management, and transportation management."

24.     Fidelitone, like New Breed, provides 3PL and reverse logistics support to a variety of industries, including the electronics, ecommerce, retail, manufacturing, and medical industries.  This support includes, *inter alia*, supply chain analysis and design; warehousing and warehouse management; order-management and fulfillment solutions, including direct-to-consumer fulfillment; kitting; inventory forecasting; receiving; storage; and return processing.

25.     In the past six years, Fidelitone has merged with six companies to increase its logistics capacities.   "These mergers expand Fidelitone's service area to 33 US locations and add expertise in key industries such as" medical devices.  This expansion brought Fidelitone to the very city where New Breed has long been headquartered and has helped make Fidelitone one of the "nation's fastest growing private companies" and "one of North America's 50 Most Successful 3PLs."

-8-

26.     The scope of Fidelitone's business, like New Breed's, extends throughout the United States.  Fidelitone indicates on its website that it offers solutions for "1-2 day order fulfillment to 98% of the US population," advertises that it has "[o]ver 30 strategic stocking locations throughout the United States," and that it "offer[s] **national** 3rd party logistics services," including "electronics industry logistics services offered nationwide" and "**national** Retail Distribution and Logistics Services."

27.     Piper resigned his employment with New Breed effective on or about October 10, 2014 to take a job at Fidelitone.

28.     On or about September 12, 2014, before Piper left New Breed's employ, New Breed sent Piper a letter reminding him of his obligations under his Employment Agreement.  New Breed specifically cautioned Piper that employment with Fidelitone within the noncompetition period would violate his noncompetition obligations.

29.     Fidelitone is a "Competitor" of New Breed, as defined in the Employment Agreement.

30.     Upon information and belief, despite New Breed's admonitions, Piper has taken a sales position at Fidelitone.  Piper is currently in breach of his noncompetition obligations by virtue of his employment with Fidelitone.  Through counsel, Piper and Fidelitone have indicated only that Piper would respect his nonsolicitation obligations, but would not commit to him honoring his noncompetition obligations.  Accordingly, to prevent continued irreparable harm from Piper's violation of his noncompetition covenant, New Breed has been compelled to file this lawsuit.

31.     As a direct, proximate, and foreseeable result of Piper's violation of his Employment Agreement, New Breed has been damaged and has incurred additional expenses and damages.

## COUNT I
## BREACH OF CONTRACT

32.     The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

33.     The Employment Agreement is a valid, binding, and enforceable contract between Piper and New Breed.

34.     The noncompetition, nonsolicitation, and nondisclosure covenants with Piper are written, were entered into as part of a contract for employment, and are based upon reasonable consideration.

35.     As consideration for the Employment Agreement, New Breed agreed to provide, and did provide, Piper with employment, with access to New Breed's customers, and with confidential and proprietary information of New Breed.

36.     Piper's noncompetition and nonsolicitation covenants with New Breed protect New Breed's legitimate and important interests, including New Breed's customer relationships, confidential information and trade secrets, and its business and competitive interests in the marketplace.

37.     Piper has breached the Employment Agreement by working for a Competitor in violation of the Employment Agreement.

38.     Piper's breach is directly and proximately damaging New Breed.

39.     Pursuant to Federal Rule of Civil Procedure 65, New Breed seeks a temporary restraining order and preliminary injunctive relief prohibiting Piper from violating his noncompetition, nonsolicitation, and nondisclosure covenants.  Unless so enjoined, Piper's breach of these covenants will cause irreparable harm to New Breed and will cause injuries that cannot be adequately compensated by monetary damages.  Unless enjoined, the injury to New Breed is immediate and pressing, and a temporary restraining order and preliminary injunctive relief are necessary to preserve the *status quo*, to protect New Breed's rights, and to prevent injury to New Breed pending the trial of this action. New Breed is likely to succeed on the merits.  In these circumstances, the equities favor New Breed and issuance of a temporary restraining order and preliminary injunction are in the public interest.

40.     In addition, as a result of Piper's breach of the Employment Agreement, New Breed is entitled to recover its damages in an amount to be proven at trial and to permanent injunctive relief fully enforcing the noncompetition, nonsolicitation, and nondisclosure covenants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, New Breed prays that this Court:

A.     Enter judgment against Piper for compensatory damages proximately resulting from his unlawful conduct in an amount to be determined at trial;

B.      Grant New Breed a temporary restraining order and preliminary and permanent injunctive relief prohibiting Piper, for a period of 7 months, from violating the noncompetition covenant in his Employment Agreement;

C.      Grant New Breed a temporary restraining order and preliminary and permanent injunctive relief prohibiting Piper, for a period of 7 months, from violating the nonsolicitation covenant in his Employment Agreement;

D.      Grant New Breed a temporary restraining order and preliminary and permanent injunctive relief enforcing Piper's nondisclosure obligations;

E.      Tax all costs of this action to Piper; and

F.      Award New Breed any such other relief as may be just and proper.

This 7th day of November, 2014.

/s/ David C. Wright, III
David C. Wright, III (N.C. Bar No. 11161)
dwright@rbh.com
Douglas M. Jarrell (N.C. Bar No. 21138)
djarrell@rbh.com
Sinéad N. O'Doherty (N.C. Bar No. 38402)
sodoherty@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

*Attorneys for Plaintiff*

**STATE OF NORTH CAROLINA**

**COUNTY OF GUILFORD**

## VERIFICATION

William G. Fraine, being first duly sworn, deposes and says that he is the COO of NEW BREED, INC. ("New Breed"), the plaintiff in the foregoing action, and that he has read the foregoing Verified Complaint and knows the contents thereof to be true, based upon information known to him personally, information set forth in public sources, and information provided to him in the regular course of business of New Breed.

_____

William G. Fraine, COO

Subscribed and Sworn to
before me this ⁷ day
of November, 2014.

Marsha M. Cole, Notary Public

My Commission Expires:  October 23, 2018
[NOTARIAL SEAL]

